# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| VERNESSA S. CUNNINGHAM AND HERMAN CUNNINGHAM, | |
| Plaintiffs, | Civil Action File No. |
| vs. | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE OF THE BANC OF AMERICA ALTERNATIVE LOAN TRUST 2004-5; AND, NATIONSTAR MORTGAGE LLC, D/B/A MR. COOPER, | |
| Defendants. | |

## VERIFIED COMPLAINT
## AND JURY DEMAND

The named plaintiffs (the "Cunninghams") bring this action against Wells

Fargo Bank, National Association, as Trustee of the securitized trust known as

the "Banc of America Alternative Loan Trust 2004-5" ("Wells Fargo") and

against Wells Fargo's agent and the Cunninghams' loan servicer: Nationstar

Mortgage LLC, d/b/a Mr. Cooper ("Nationstar"), and allege the following:

### OUTLINE OF THE CASE

1.

Through bungled record keeping, Wells Fargo and Nationstar put the

Cunninghams' mortgage loan into a delinquency and foreclosure status



-1-

despite the fact that the Cunninghams are demonstrably current on their loan. Worse, the defendants ignored the Cunninghams' repeated requests to correct their loan balance. The defendants have refused to accept the Cunninghams' (correctly calculated) mortgage-loan installment payments. They have begun advertising the June 2019 non-judicial foreclosure sale of the Cunninghams' home. This action asserts counts for damages for the defendants' mortgage-servicing abuses under the Real Estate Settlement Procedures Act of 1974 ("RESPA").[1] It asserts counts under state law and Fed. R. Civ. P. 65 for damages and injunctive relief from the irreparable harm threatened by the advertised foreclosure sale. And, it asserts counts for declaratory relief.

### JURISDICTION AND VENUE

2.

This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because this matter involves claims that arise under the laws of the

---

[1] Pub. L. No. 93–533; 88 Stat. 1726 (1974), as amended by, inter alia, the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law No. 111-203, 124 Stat. 1376 (2010), codified at 12 U.S.C. 2601, *et.seq*. This act and its implementing Regulation "X" (12 C.F.R. Part 1024) which is enforced by the Consumer Financial Protection Bureau ("CFPB") are referred to collectively as "RESPA" unless otherwise stated or the context logically suggest otherwise.



United States (the "Original Claims").

3.

This Court also has subject-matter jurisdiction over this action under 12 U.S.C. § 2614 because this action involves a claim or claims authorized under Sections 6 (12 U.S.C. § 2605), 8 (12 U.S.C. § 2607), or 9 (12 U.S.C. § 2608) of RESPA, and because any such claim or claims "may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred...."

4.

This Court has supplemental subject-matter jurisdiction over all non-federal-question claims under 28 U.S.C. § 1367(a) because such claims are so closely related to the Original Claims that they form part of the same case or controversy under Article III of the United States Constitution; and, none of the exceptions under 28 U.S.C. § 1367(b) or (c) are presented.

5.

This Court's exercise of personal jurisdiction over the named defendants would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the defendants purposefully established



minimum contacts in Georgia; they have "continuous and systematic general business contacts" with Georgia such that the maintenance of this action does not offend traditional notions of fair play and substantial justice;[2] and, this action "arise[s] out of or relate[s] to" the defendants' contacts with Georgia, including the real property that is the subject of this litigation.[3]

6.

Venue is proper in the Northern District of Georgia because this action involves claims authorized under RESPA which "may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred...."[4]

7.

Venue is also proper in the Northern District of Georgia under 28 U.S.C. §

---

[2] *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

[3] See, e.g., *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), *Shaffer v. Heitner*, 433 U.S. 186, 207–08 (1977) ("when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction").

[4] 12 U.S.C.A. § 2614 (West).

-4-

1391(b) because it is a judicial district in which a substantial part of the events or omissions giving rise to this action occurred and because it is a district in which all of the property that is the subject of this action is situated.

## THE PARTIES

*The Plaintiffs*

8.

Plaintiff Vernessa S. Cunningham is a natural person, a citizen of the State of Georgia, and a resident and co-owner of the parcel of real property described in ¶ 17, *infra* (the "Home").

9.

Plaintiff Herman Cunningham is a natural person, a citizen of the State of Georgia, a resident and co-owner of the Home.

*Defendant Wells Fargo*

10.

Defendant Wells Fargo is a "national banking association" organized under the laws of the United States.[5]

---

[5] See the National Bank Act, codified at 12 U.S.C.A. §§ 21, *et seq.* (West), 12 U.S.C.A. § 2602(5) (West).



11.

Wells Fargo may "be sued…in any court of law and equity, as fully as natural persons."[6]

12.

Wells Fargo's "main office," as designated in its articles of association, is in the City of Sioux Falls, County of Minnehaha, State of South Dakota; as such, Wells Fargo is a citizen of the State of South Dakota.[7]

13.

Wells Fargo has voluntarily designated, and may be served in care of, its registered agent for service of process in Georgia Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross (Gwinnett County), Georgia 30092.

*Defendant Nationstar*

14.

Defendant Nationstar is a Delaware limited liability company with its principal place of business in Dallas, Texas.

---

[6] 12 U.S.C.A. § 24 (West).

[7] 28 U.S.C.A. § 1348 (West); see *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located").



15.

Nationstar is registered with the Georgia Secretary of State as a foreign

LLC, and does business in Georgia under the brand name "Mr. Cooper."

16.

Nationstar may be served in care of its agent for service of process in

Georgia, to wit: Corporation Service Company, 40 Technology Parkway

South, Suite 300, Norcross (Gwinnett County), Georgia 30092.

### FACTUAL ALLEGATIONS
### COMMON TO ALL COUNTS

*The Home*

17.

The Cunninghams seek relief in connection with the below-described

parcel of real estate, which is their principal residence and dwelling (the

"Home") with the following street address: **5024 Klondike Rd. Lithonia**

**(DeKalb County), Georgia 30038** according to the current system of street

numbering, and with the following legal description:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING
> IN LAND LOT 231 AND 232 OF THE 11TH DISTRICT OF
> DEKALB COUNTY, GEORGIA BEING MORE PARTICULARLY
> DESCRIBED AS FOLLOWS: TO FIND A BEGINNING POINT,
> START AT THE INTERSECTION OF THE SOUTHEASTERLY
> RIGHT OF WAY LINE OF KLONDIKE ROAD WITH THE



CENTER LINE OF SOUTH RIVER AND RUNNING NORTH 71 DEGREES 43 MINUTES EAST 126.4 FEET ALONG KLONDIKE ROAD; THENCE RUNNING NORTH 60 DEGREES 38 MINUTES EAST ALONG KLONDIKE ROAD TO AN IRON PIN; THENCE RUNNING NORTH 48 DEGREES 11 MINUTES EAST ALONG KLONDIKE ROAD 165.31 FEET; THENCE RUNNING NORTH 27 DEGREES 51MINUTES EAST ALONG KLONDIKE ROAD 166.40 FEET; THENCE RUNNING NORTH 07 DEGREES 08 MINUTES EAST ALONG KLONDIKE ROAD 180.45 FEET TO A POINT; THENCE RUNNING NORTH 14 DEGREES 34 MINUTES WEST ALONG KLONDIKE ROAD 182.22 FEET TO AN IRON PIN AND THE POINT OF BEGINNING; THENCE RUNNING NORTH 26 DEGREES 55 MINUTES WEST ALONG KLONDIKE ROAD 3340.0 FEET TO AN IRON PIN; THENCE RUNNING SOUTH 88 DEGREES 28 MINUTES EAST 973.12 FEET TO A POINT; THENCE RUNNING SOUTH 05 DEGREES 48 MINUTES WEST 299.76 FEET TO A POINT; THENCE RUNNING NORTH 88 DEGREES 28 MINUTES WEST 788.98 FEET TO THE POINT OF BEGINNING. **Tax Parcel ID: 1123201006**.

18.

On or about November 24, 1998, plaintiff Vernessa S. Cunningham

purchased and acquired fee simple title to the Home via a Warranty Deed that

was duly recorded on December 4, 1998, and indexed at Book 10377 Page 417

of the DeKalb County, Georgia real estate records.

19.

On or about November 24, 1999, Vernessa S. Cunningham conveyed her

interest in the Home to herself and to plaintiff Herman Cunningham, as joint

tenants with right of survivorship, via a Warranty Deed that was duly



-8-

recorded on February 18, 1999, and indexed at Book 10529 Page 373 of the DeKalb County real estate records.

20.

The Home is designed for the occupancy of one family.

*The Subject Loan*

21.

On or about March 11, 2004, the Cunninghams executed a promissory note (the "Note") in the principal face amount of $262,307 in favor of mortgage lender Bank of America, N.A. ("BANA") to evidence a home mortgage loan that refinanced the first-position purchase-money loan already secured on their Home ( the "Subject Loan" — Account Number ending in "8567").

22.

Under the terms of the Note, the Subject Loan was to bear interest at a yearly rate of 6.000% and was due to be repaid according to an amortization schedule with the first installment payment due May 1, 2004, and final payment due April 1, 2034.

23.

As security for the Subject Loan, the Cunninghams conveyed title to the Home to BANA via a first-position security deed recorded on April 21, 2004,



at Book 16045 Page 657 of the DeKalb County real estate records (the "Security Deed," Attachment "A").

24.

The terms of the Security Deed required the Cunninghams to pay funds into escrow sufficient to allow the servicer of the Subject Loan to prepay expected hazard insurance premiums and real estate taxes.

25.

The Security Deed features a "power of sale" that authorizes the lender to conduct a nonjudicial foreclosure sale of the Home at public auction in the event of an uncured default in the servicing of the Subject Loan (the "Power of Sale").

26.

On or about May 19, 2014, BANA assigned the Security Deed and the Subject Loan to Wells Fargo Bank, National Association, as Trustee of the Banc of America Alternative Loan Trust 2004-5 ("Wells Fargo") via an assignment recorded at Book 24395 Page 222 of the DeKalb County real estate records (the "First Assignment," Attachment "B").[8]

---

[8] For reasons unclear, a second assignment of the Security Deed between BANA and Wells Fargo was recorded on or about December 15, 2014, at

27.

On or about September 4, 2014, the Cunninghams entered into a binding
loan modification agreement (the "Modification Agreement") with Nationstar,
who was acting as an agent for its principal, Wells Fargo.

28.

The effective date of the Modification Agreement was September 1, 2014.

29.

The essential terms of the Modification Agreement were that the Subject
Loan's modified principal balance was stipulated to be $222,437.51 (the
"New Principal Balance" or "NPB"); that the accrual of interest on
$37,632.52 of the NPB was to be deferred, resulting in interest accruing only
on $184,804.99 (the "Interest Bearing Principal Balance" or "IBPB"); that
interest was to accrue on the IBPB at a reduced annual rate of 4.750% as of
September 1, 2014, with a first payment due on October 1, 2014; and, that the
new maturity date of the Subject Loan was extended to September 1, 2054.

---

Book 24716 Page 103 of the DeKalb County real estate records (Attachment
"C").



-11-

30.

On or about October 20, 2014, the Cunninghams filed a voluntary petition for protection under Chapter 13 of the U.S. Bankruptcy Code, with the U.S. Bankruptcy Court for the Northern District of Georgia — Case No. 14-70730-pmb.

31.

The Cunninghams' pre-petition arrearage with respect to the Subject Loan was approximately $1,826.43.

32.

Between November 12, 2015, and February 11, 2017, the Cunninghams made payments directly to Nationstar (outside of the plan) totaling $12,182.27 as set forth in the following table:

| Date | Amount |
|---|---|
| November 12, 2015 | $1,165.00 |
| December 12, 2015 | $800.00 |
| January 11, 2016 | $800.00 |
| February 8, 2016 | $800.00 |
| March 4, 2016 | $860.74 |
| April 14, 2016 | $870.73 |
| July 7, 2016 | $860.74 |
| August 8, 2016 | $860.71 |

-12-

| Date | Amount |
|---|---|
| September 7, 2016 | $860.74 |
| October 10, 2016 | $860.71 |
| November 6, 2016 | $860.74 |
| December 2, 2016 | $860.74 |
| January 4, 2017 | $860.71 |
| **TOTAL:** | **$12,182.27** |

33.

On June 12, 2015, the Bankruptcy Court approved the Cunninghams'
Chapter 13 plan.

34.

On June 4, 2018, the Cunninghams' case was converted to one under
Chapter 7 of the Bankruptcy Code.

35.

By the time their case was converted to Chapter 7, the Cunninghams were
current on the Subject Loan; and, the Cunninghams continued to pay (and
Nationstar continued to accept) each loan installment in timely fashion.

36.

On October 31, 2018, the Bankruptcy Court entered an Order discharging
the Cunninghams and closing their bankruptcy estate.

-13-

*The defendants make an error
in servicing the Subject Loan.*

37.

On or about December 20, 2018, Nationstar transmitted a letter to the

Cunninghams advising them—falsely—that the Subject Loan was "past due

for the 07/01/2018 payment and is due for all payments from and including

that date."

38.

In its December 20, 2018 letter Nationstar advised the Cunninghams that

the total amount due under the Subject Loan:

> … (including principal, interest, and escrow if applicable), late fees,
> NSF fees, and other fees and advances due under the terms of the
> loan documents are past due in the amount of **$7,771.28**. In order to
> cure this default, you must pay the total amount due of **$7,771.28** in
> addition to other amounts that become due from the date of this
> letter through the date you pay.

*The Cunninghams try to get the
defendants to correct their error.*

39.

The Cunninghams disagreed with Nationstar's claimed arrearage because,

by their calculations, their loan was current.



40.

The Cunninghams attempted to discuss the accounting for their loan with
Nationstar; but Nationstar refused to consider their opinion or analysis.

41.

On or about December 26, 2018, the Cunninghams met with and hired an
attorney to analyze their loan history and to advise them appropriately
regarding their legal options.

42.

The Cunninghams paid their attorney $1,775 to analyze their loan history,
prepare a Notice of Error under RESPA, and otherwise to advise them of their
options.

43.

The Cunninghams' attorney recreated their loan history based on available
evidence, and determined that between November 12, 2015, and February 11,
2017, the Cunninghams made payments to Nationstar that totaled $12,182.27
(see ¶ 32, *supra*) but that Nationstar had failed to credit the Cunninghams'
account with these payments.



-15-

44.

On or about January 23, 2019, the Cunninghams' attorney spoke with a Nationstar representative by telephone.

45.

The Nationstar representative advised counsel for the Cunninghams — falsely — that Nationstar had sent a letter to the Cunninghams in December of 2018 explaining Nationstar's position as to why the Subject Loan was not in arrears.

46.

On January 23, 2019, the Cunninghams' attorney transmitted to Nationstar a letter captioned "**Notice of Error Related to the Servicing of a Mortgage Loan**" via U.S. Post Office Certified Mail (No. 7016 2710 0000 9560 3227) in an envelope with sufficient first-class postage affixed thereon, and properly addressed to Nationstar at the address designated by Nationstar for receipt of notices of error (the "NOE," Attachment "D").

47.

The NOE represented a conforming "qualified written request" under RESPA code section 12 U.S.C. § 2605(e) and a "Notice of Error" under RESPA regulation 12 C.F.R. § 1024.35.



-16-

48.

The NOE stated the fact that Nationstar had committed an error in the servicing of the Subject Loan.

49.

The NOE identified and described Nationstar's error in failing "to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law."

50.

The NOE identified and described Nationstar's error as a failure "to credit a payment to the mortgage loan account as of the date of receipt in violation of the Truth in Lending Act 15 U.S.C. § 1639f, and its implementing regulation "Z," 12 C.F.R. § 1026.36(c)(l)."

51.

The NOE identified and described Nationstar's error as "relating to the servicing of a borrower's loan — as demonstrated below. (Ref. 12 CFR § 1024.35(b)(11))."

52.

The NOE included copies of proofs of payment (MoneyGram statements and receipts); and, it identified 14 payments, totaling $12,734.75, that had not

been applied to the Subject Loan, as set forth in ¶ 32, *supra*.[9]

53.

Nationstar received the NOE on January 28, 2019 at 12:17 p.m. (see

Attachment "E", Proof of Delivery).

54.

On or about January 30, 3019, Nationstar transmitted to the Cunninghams'

attorney a letter in response to the NOE (the "January 30, 2019 Letter" —

Attachment "F").

55.

In the January 30, 2019 Letter, Nationstar advised the Cunninghams that it

had:

> ... received your correspondence on January 28, 2019, regarding
> the above-referenced loan. We thank you for bringing this matter
> to our attention. We take all matters seriously and are in the
> process of reviewing your concerns. A response will be provided
> no later than March 8, 2019.

56.

After receiving the NOE, under 12 C.F.R. § 1024.35(e)(1) (2016),

Nationstar was required to respond by either:

---

[9] Attachment "D," pp. 9–11, *infra*.



(A)     Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)     Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

57.

After receiving the NOE, under 12 C.F.R. § 1024.35(e)(3)(C) (2016), Nationstar was required to "comply with the requirements of paragraph (e)(1) … not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error."

58.

Because Nationstar received the NOE on January 28, 2019, it was required to comply with paragraph (e)(1) by no later than **March 12, 2019** (i.e., 30 business days from receipt).



-19-

59.

On or about February 1, 2019, the Cunninghams transmitted a check to

Nationstar (No. 197) in the amount of $1,087.83 to cover the February 1, 2019

installment due under the Subject Loan.

60.

On or about February 12, 2019, Nationstar returned check No. 197 to the

Cunninghams, and in its transmittal letter advised:

> We recently received a payment on your behalf in the amount of
> $1,087.83. We are returning these funds as they are insufficient to
> bring your account current. As of the date of this letter [February 12,
> 2019], the total amount required to bring this account current is
> $10,044.70.

61.

Nationstar refused to accept any further payments transmitted by the

Cunninghams.

62.

To date, the Cunninghams have deposited into a dedicated bank account

each monthly mortgage installment due since their February 2019 installment

was rejected; and, they stand prepared to pay all of the sums so deposited to

Nationstar as a continuing tender.



-20-

63.

March 8, 2019 came and went; but Nationstar failed to provide any response to the Cunninghams as promised in its January 30, 2019 letter.

64.

March 12, 2019 came and went; but Nationstar failed to satisfy its duties under 12 C.F.R. § 1024.35(e)(1) by either (A) correcting the identified errors, or (B) advising the Cunninghams in writing that it had "determined that no error occurred," along with "a statement of the reason or reasons for this determination...."

*The defendants attempt to*
*foreclose on the Home.*

65.

On or about May 1, 2019, attorneys hired by Nationstar transmitted a letter to the Cunninghams declaring that the Subject Loan had been "declared due and payable because of, among other possible events of default, failure to pay indebtedness as provided for in the Note and ... Security Deed," and notifying them of its intention to conduct a public, nonjudicial foreclosure sale of the Home on June 4, 2019, at the DeKalb County Courthouse.



-21-

66.

On May 9, 2019 and again on May 16, 2019, Wells Fargo and Nationstar published advertisements in the publicly circulated newspaper, the *Champion*, announcing its intention to exercise the Power of Sale in the Security Deed by offering the Home for sale at a public auction on the DeKalb County, Georgia, courthouse.

67.

The thrust of the defendants' publications in the Champion amounted to the publication of untrue, derogatory, and humiliating statements about the Cunninghams' financial condition.

68.

Given the Cunninghams' extensively documented efforts to correct their mortgage accounting, the defendants' publishing of untrue, derogatory, and humiliating statements about the Cunninghams was done knowingly and intentionally, or with such gross recklessness as to amount to a knowing and intentional publication.

69.

As a direct and proximate consequence of the defendants' publications, the Cunninghams suffered extreme embarrassment, anxiety, and mental distress.



70.

Nationstar's failure "to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the" Cunninghams' mortgage loan "in accordance with applicable law" is a practice that it has engaged in repeatedly — literally thousands of times — with other borrowers throughout the United States.

> *The defendants are in the habit of making and*
> *refusing to correct their loan-servicing errors.*

71.

The Consumer Financial Protection Bureau maintains a "Consumer Compliant Database" in which it receives and publishes data related to complaints from consumers regarding the activities of lenders and servicers.[10]

72.

As of May 20, 2019, when the search terms "Nationstar Mortgage" and "Mortgage" are input, the CFPB's database returns 19,658 matches, of which 4,274 contain "narratives," and of which 514 relate to "Trouble during payment process."[11]

---

[10] https://www.consumerfinance.gov/data-research/consumer-complaints/search/

[11] See Attachment "G".



-23-

73.

One (of many) example of a servicing complaint (Ref. No. 2859331) that is

similar to that of the Cunninghams was received on March 29, 2018, in which

the (anonymous) borrower wrote:

> I have been unable to get any answers, for months, from Mr. Cooper
> as to why they have not applied my mortgage payments to my loan
> after a Chapter XXXX [*sic*] hardship discharge. I have never missed
> a mortgage payment. I have received threatening letters of
> foreclosure if the current amount of {$5300.00} is not received in
> full which has caused much anxiety and many sleepless nights. I
> continue to get the runaround from Mr. Cooper as my loan specialist,
> XXXX XXXX [*sic*], acknowledges this is an issue within the
> bankruptcy department but yet is unable to answer any of my
> questions. Again, I have been trying to get answers for months but
> to no avail. Looking over the accounting from Mr. Cooper of posted
> payments, there is a holding of {$7300.00} on XX/XX/XXXX [*sic*]
> in unapplied funds which is more than enough to cover the said
> owed amount with a surplus. Mr. Cooper has stopped applying
> payments to the balance of my loan and have not applied payments
> correctly throughout Chapter XXXX [*sic*]. Today I received a
> foreclosure letter from the attorney representing Mr. Cooper. I can
> not lose my home due to this lenders error or unwillingness to give
> me requested information. Mortgage was current when Chapter
> XXXX [*sic*] was filed, and I was paying direct.[12]

74.

Nationstar's pattern and practice of repeatedly failing to properly apply its

---

[12] https://www.consumerfinance.gov/data-research/consumer-complaints/
search/detail/2859331 (last viewed May 20, 2019).



borrowers' payments and to correct its errors when presented with evidence of

its errors represents a pattern or practice of violations of its duties under 12

U.S.C. § 2605 either to "make appropriate corrections," or to provide

appropriate explanations to its borrowers regarding such errors.

75.

As the direct and proximate result of receiving a notice of intent to

foreclose on their Home the Cunninghams have suffered, and continue to

suffer extreme emotional distress, including mental anguish, nervousness,

sleeplessness, and anxiety.

## COUNT I
### FAILURE TO INVESTIGATE OR TO
### RESPOND TO A NOTICE OF ERROR

76.

The Cunninghams re-allege and adopt by reference ¶¶ 2–75.

77.

At all times relevant to this action the Cunninghams, Wells Fargo, and

Nationstar were "persons" within the meaning of RESPA.[13]

---

[13] 12 U.S.C.A. § 2602(5) (West). Regarding Wells Fargo, a national bank, and Nationstar, a limited liability company, see *Sumpter v. Sec'y of Labor*, 763 F.3d 1292, 1299 (11th Cir. 2014) (applying interpretive rules to hold that



78.

At all times relevant to this action, the Subject Loan (described in ¶¶

21–29, *supra*) was a "*federally related mortgage loan*," within the meaning of

RESPA in that it was "secured by a first or subordinate lien on residential real

property... designed principally for the occupancy of from one to four

families," and that it satisfied any one or more of the criteria stated in the

following ¶¶ 79–82.[14]

79.

The Subject Loan was made by a "lender the deposits or accounts of which

are insured by [an] agency of the Federal Government, or [was] made in

whole or in part by [a] lender which is regulated by any agency of the Federal

Government...."[15]

_____

the term "corporation" includes a limited liability company for the purpose of
the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 *et seq*.).

[14] 12 U.S.C.A. § 2602(1) (West), 12 C.F.R. § 1024.2(b) (2013).

[15] 12 U.S.C.A. § 2602(1)(B)(i) (West), 12 C.F.R. § 1024.2(b) (2013). Some
or all of these factual contentions "will likely have evidentiary support after a
reasonable opportunity for further investigation or discovery...." Fed. R. Civ.
P. 11(b)(3).



-26-

80.

The Subject Loan was "made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the [Secretary of Housing and Urban Development] or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the [Secretary of Housing and Urban Development] or a housing or related program administered by any other such officer or agency...."[16]

81.

The Subject Loan was "intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation...."[17]

---

[16] 12 U.S.C.A. § 2602(1)(B)(ii) (West), 12 C.F.R. § 1024.2(b) (2013). Some or all of these factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...." Fed. R. Civ. P. 11(b)(3).

[17] 12 U.S.C.A. § 2602(1)(B)(iii) (West), 12 C.F.R. § 1024.2(b) (2013). Some or all of these factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...." Fed. R. Civ. P. 11(b)(3).



-27-

82.

The Subject Loan was "made in whole or in part by any 'creditor,'" as such

term is defined under 15 U.S.C. § 1602 and "who makes or invests in

residential real estate loans aggregating more than $1,000,000 per year...."[18]

83.

The Subject Loan does not satisfy any of the exemptions from RESPA

coverage of federally related mortgages listed under 12 C.F.R. § 1024.5(b)

(2013).

84.

As a "*federally related mortgage loan*," the Subject Loan is subject to

RESPA's general regulatory scheme under Regulation "X" (12 C.F.R. Part

1024).[19]

85.

At all times relevant to this action, Nationstar was a "*servicer*," within the

meaning of RESPA in that it was engaged in the practice of "receiving ...

---

[18] 12 U.S.C.A. § 2602(1)(B)(iv) (West), 12 C.F.R. § 1024.2(b) (2013).
Some or all of these factual contentions "will likely have evidentiary support
after a reasonable opportunity for further investigation or discovery...." Fed.
R. Civ. P. 11(b)(3).

[19] 12 C.F.R. § 1024.5(a) (2013).



scheduled periodic payments from [borrowers] pursuant to the terms of any

loan,…and making the payments of principal and interest and such other

payments with respect to the amounts received from the borrower[s] as may

be required pursuant to the terms of the loan[s]," and Nationstar did not

satisfy any recognized exception to the definition.

86.

At all times relevant to this action, Nationstar was engaged in the act of

"*servicing*" numerous federally related mortgage loans within the meaning of

RESPA.

87.

At all times relevant to this action, Nationstar was engaged in servicing the

Subject Loan on behalf of, at the instance of, and as the authorized agent of

Wells Fargo; and, Nationstar was acting within the course and scope of that

agency.

88.

At all times relevant to this action Nationstar was acting and Wells Fargo

and Nationstar operated as a common enterprise whereby an act by Nationstar

constituted an act by Wells Fargo.



89.

Wells Fargo and Nationstar are jointly and severally liable for the acts and practices of each other as alleged in this Complaint.

90.

For the purpose of RESPA's mortgage-loan servicing scheme the term "error" is defined according to eleven categories of "covered errors" listed in paragraphs (1) through (11) of 12 C.F.R. § 1024.35(b) (2016).

91.

One covered-error category — 12 C.F.R. § 1024.35(b)(*2*) — refers to a servicer's "Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law."[20]

92.

Another covered-error category — 12 C.F.R. § 1024.35(b)(*11*) — is more general: "Any other error relating to the servicing of a borrower's mortgage loan."[21]

---

[20] 12 C.F.R. § 1024.35(b)(2) (2016).

[21] 12 C.F.R. § 1024.35(b)(11) (2016).



-30-

93.

12 C.F.R. § 1024.35(a) provides, in relevant part that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

94.

The NOE complied with 12 C.F.R. § 1024.35(a) in that it included the names of the borrowers, information that enabled Nationstar to identify the Subject Loan, and the errors the Cunninghams believe occurred.

95.

Nationstar failed to correct the Cunninghams' account in violation of 12 U.S.C. §2605(e)(2).

96.

Nationstar did not send, nor did the Cunninghams or their attorney receive, any other correspondence consisting of a substantive response to the NOE other than the January 30, 2019 Letter.



97.

The January 30, 2019 Letter was insufficient in form and substance in

responding to the NOE so as to comply with 12 C.F.R. § 1024.35(e)(1)(C).

98.

The January 30, 2019 Letter did not contain a statement that:

> …the servicer has determined that no error occurred, a statement of
> the reason or reasons for this determination, a statement of the
> borrower's right to request documents relied upon by the servicer in
> reaching its determination, information regarding how the borrower
> can request such documents, and contact information, including a
> telephone number, for further assistance.

99.

Nationstar did not send, nor did the Cunninghams or their lawyer receive,

any other correspondence requesting an extension of time to respond to the

NOE under 12 C.F.R. § 1024.35(e)(3)(ii).

100.

Nationstar 's actions in failing to provide a response to the NOE in

compliance with 12 C.F.R. § 1024.35(e)(1)(C) on or before March 12, 2019

(*or ever*) constitutes a willful violation of 12 C.F.R. § 1024.35(e).

101.

Nationstar's investigation of the NOE — assuming it conducted one — was



unreasonable under 12 U.S.C. § 2605(e)(2)(B) and 12 C.F.R. §
1024.35(e)(1)(i)(B).

102.

Nationstar's unreasonable investigation (if one had occurred) prevented it
from discovering and correcting the errors that the Cunninghams identified in
the NOE, in violation of 12 U.S.C. § 2605(e)(2)(A) and 12 C.F.R. §
1024.35(e)(1)(i)(A).

103.

As borrowers with respect to a federally related mortgage loan who are
damaged by a servicer's violation of RESPA, the Cunninghams are entitled to
pursue a private right of action and an award of damages against Nationstar.[22]

104.

The Cunninghams are entitled to recover actual damages sustained and
reasonable attorney's fees.[23]

105.

Nationstar has engaged in a pattern or practice of non-compliance with the
requirements of the mortgage servicer provisions of RESPA as contemplated

---

[22] 12 U.S.C.A. § 2605(f) (West).

[23] 12 U.S.C.A. § 2605(f)(1) and (f)(3) (West).



by 12 U.S.C. § 2605(f)(B).

106.

The Cunninghams are entitled to recover "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605]," not to exceed $2,000 for each such failure by Nationstar.[24]

107.

The Cunninghams have suffered and continue to suffer harm in the form of emotional distress instigated and exacerbated by Nationstar's inexplicable ongoing failure to perform its servicing obligations under the terms of the Subject Loan and applicable law.

## COUNT II
### BREACH OF CONTRACT

108.

The Cunninghams re-allege and adopt by reference ¶¶ 2–107.

109.

Nationstar and Wells Fargo breached their contractual obligations to the

---

[24] 12 U.S.C.A. § 2605(f)(1)(A) (West).



Cunninghams in at least the ways described in the following ¶¶ 110–118.

110.

Nationstar and Wells Fargo improperly failed to apply all payments received from the Cunninghams between November of 2015 and January of 2017 to the Cunninghams' mortgage account according to the terms of the Subject Loan, as modified.

111.

Nationstar and Wells Fargo improperly assessed the Cunninghams' mortgage account charges and fees unauthorized by the Subject Loan, as modified.

112.

Nationstar and Wells Fargo improperly declared the Cunninghams to be in default of the Subject Loan, as modified, when no such default existed.

113.

Nationstar and Wells Fargo improperly initiated foreclosure proceedings contrary to the terms of the Subject Loan, as modified.

114.

Nationstar and Wells Fargo also breached their contractual obligations to the Cunninghams by breaching the covenant of good faith and fair dealing



that is implied in every contract in Georgia.

115.

"Good faith" means substantial compliance with the (de facto) spirit and not merely the (de jure) letter of a written agreement.

116.

The covenant of good faith applies where "the manner of performance [of a contractual provision] is left more or less to the discretion of one of the parties to the contract...."[25]

117.

Even though Wells Fargo and Nationstar are authorized by contract to exercise discretion in the servicing of the Subject Loan, the implied covenant of good faith and fair dealing does not authorize them to exercise this discretion in an arbitrary fashion by failing to keep proper accounting of payments and by failing to correct errors in their accounting performance.

118.

Nationstar's and Wells Fargo's ongoing, willful, and intentional failure to

---

[25] See *Ameris Bank v. Alliance Inv. & Mgmt. Co.,* 321 Ga. App. 228, 234 (2013), *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.,* 281 Ga. App. 450, 453–54 (2006).



-36-

perform their contractual obligations under the Subject Loan, as modified, are

a blatant violation of their obligation of good faith and fair dealing.

119.

The Cunninghams are entitled to a decree either enjoining or rescinding

and setting aside any foreclosure sale, cancelling any Foreclosure Deed or

Deed Under Power (including any subsequently recorded muniment of title),

for damages proximately resulting from the foregoing breaches, and for

declaratory relief as discussed *infra*.

**COUNT III**
**WRONGFUL FORECLOSURE**

120.

The Cunninghams re-allege and adopt by reference ¶¶ 2–119.

121.

Georgia law, codified at O.C.G.A. § 23-2-114, requires "[p]owers of sale

in deeds of trust, mortgages, and other [ ] instruments be strictly construed

and [ ] be fairly exercised."[26]

---

[26] Although there is a technical difference between the concepts of "deed of trust" or "mortgage" and "security deed" these terms have been declared to be effectively interchangeable in this context. See, e.g., *U.S. Bank v. Gordon*, 289 Ga. 12, 14 (2011) ("this court has treated deeds to secure debts... as

-37-



122.

Breach of the requirement of fairly exercising the power of sale represents

an actionable breach of duty: "[t]here exists a statutory duty upon a [mortgage

lender] to exercise [the power of sale] fairly and in good faith.... Although

arising from a contractual right, breach of this duty is a tort [, i.e., "wrongful

foreclosure,"] compensable at law."[27]

123.

A mortgage lender also breaches this duty if, in foreclosing, it violates

terms of the parties' loan agreement.[28]

124.

A claim for wrongful foreclosure gives the aggrieved debtor alternative

legal remedies of (a) cancellation of the foreclosure sale and recovery of

damages not associated with the value of the property, or (b) damages for the

---

equitable mortgages").

[27] See *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994); see
*Stewart v. SunTrust Mortgage, Inc.* 331 Ga. App. 635 (2015) (breach of the
servicer's duty of loyalty and good faith in servicer's capacity as borrower's
attorney-in-fact also gives rise to wrongful foreclosure).

[28] See *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 374
(2004).



loss of the equity in the unlawfully-foreclosed property.[29]

125.

"It is not necessary that [a] foreclosure be completed to bring an action for wrongful foreclosure." The fact that the creditor "initiated foreclosure proceedings by advertising the properties for sale is sufficient to support a claim for wrongful foreclosure."[30]

126.

Wells Fargo and Nationstar are liable for wrongful foreclosure because they breached the contractual duties described under Count II for Breach of Contract by failing to apply payments properly, assessing unauthorized charges, improperly declaring a default, improperly initiating foreclosure proceedings, and breaching the covenant of good faith and fair dealing.

---

[29] See *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994) (reconsideration denied June 24, 1994), *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 556 n.1 (2008), *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327 (1980) (alternative remedies for wrongful foreclosure).

[30] *Sears Mortgage Corp. v. Leeds Bldg. Products*, 219 Ga. App. 349, 350 (1995), aff'd in part, rev'd in part, 267 Ga. 300 (1996), and vacated in part, 225 Ga. App. 806 (1997), citing *Sale City v. Planters & Citizens Bank*, 107 Ga. App. 463 (1963).



127.

Because acceleration of the Note was unauthorized and premature, Wells

Fargo and Nationstar had no legal right to initiate foreclosure proceedings;

they therefore failed to exercise the Power of Sale in strict compliance with

the terms of the Security Deed, and they unfairly exercised the Power of Sale.

128.

The Cunninghams are entitled to the suspension, cancellation, and/or

rescission of the sale due to wrongful foreclosure, and for any other allowable

damages.

## COUNT IV
### WRONGFUL ATTEMPTED
### FORECLOSURE

129.

The Cunninghams re-allege and adopt by reference ¶¶ 2–127.

130.

Despite the fact that the noticed foreclosure sale was unconsummated

Wells Fargo and Nationstar breached duties under the Security Deed that

directly and proximately caused the Cunninghams to suffer substantial mental

anguish, nervousness, sleeplessness, and anxiety.



131.

Wells Fargo and Nationstar breached duties under the Security Deed that directly and proximately caused the Cunninghams to incur unnecessary expenses of litigation.

132.

Wells Fargo and Nationstar are liable to the Cunninghams for attempting to exercise the power of sale and threatening foreclose on the Cunninghams' Home without the legal authority to do so in an amount to be determined.[31]

## COUNT V
## INJUNCTIVE RELIEF

133.

The Cunninghams re-allege and adopt by reference ¶¶ 2–128.

134.

The Cunninghams have a substantial likelihood of success on the merits of one or more of the claims asserted in this action.[32]

---

[31] See *Essien v. CitiMortgage, Inc.*, 335 Ga. App. 727, 729 (2016) (citing with approval *In re Pullen*, 451 B.R. 206, 212 (Bankr. N.D. Ga. 2011)).

[32] See *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).



-41-

135.

Pending the final determination of the merits of this action, irreparable harm or injury will likely be visited upon the Cunninghams unless this Court issues an injunction prohibiting the defendants from depriving them of ownership or possession of the Home.[33]

136.

This Court has the discretion to grant an interlocutory injunction "to preserve the status quo and balance the conveniences of the parties pending final adjudication."[34]

137.

The threatened harm or injury outweighs the harm that the requested injunctive relief would inflict on any defendant.[35]

138.

A preliminary injunction protects a party "from irreparable injury and … [this C]ourt's power to render a meaningful decision after a trial on the

---

[33] Id.

[34] See *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

[35] Notably, given that the Plaintiff(s) seek leave to pay admittedly-due mortgage installments into the registry of the clerk of court, the greater likelihood is that the defendant(s) will actually *benefit* from the issuance of an injunction conditioned on such payments.



-42-

merits,"[36] It is in the public interest for a citizen not to be deprived of their interest in property, especially their home, without there having been a full adjudication of the legitimacy of the power of sale used to foreclose.

139.

Because the defendants refuse to accept the amounts actually due under the Subject Loan, the Cunninghams seek leave of this Court to perfect their tender of such amounts and to "do equity" by paying the amounts they acknowledge owing into the registry of the Clerk of Court.

140.

The Cunninghams are entitled to a temporary restraining order — ex parte if merited — that grants them leave to pay funds into the registry, enjoins the advertising for sale, the sale, transfer, or encumbrance of the Home, and that sets this matter down at the earliest possible date for a hearing on their entitlement to an interlocutory injunction awarding the same interlocutory relief.

**COUNT VI**
**DECLARATORY RELIEF**

141.

The Cunninghams re-allege and adopt by reference ¶¶ 2–128.

---

[36] *Long v. Benson*, 383 Fed. Appx. 930, 931 (11th Cir. 2010).

-43-



142.

Under the Declaratory Judgment Act, codified at 28 U.S.C. § 2201(a), "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

143.

The Cunninghams seek a declaration of legal rights as between the named parties.

144.

There is an actual, present, and justiciable controversy between the named parties arising out of the foregoing averments of fact.

145.

If the Court finds that no actual controversy exists, then the ends of justice require that the requested declaration or declarations be made.

146.

A declaratory judgment would provide clarity and terminate the controversy giving rise to this proceeding, and serve as guide for future conduct to allow the parties to make responsible decisions.



147.

The Cunninghams are entitled to an order, decree, and judgment declaring that their accounting for the Subject Loan is proper, correct, and in conformity with the terms of the Subject Loan and applicable law — including RESPA — and that they are not in default of the Subject Loan.

## COUNT VII
### EXPENSES OF LITIGATION
### FOR STATE-LAW CLAIMS
### UNDER O.C.G.A. § 13-6-11

148.

The Cunninghams re-allege and adopt by reference ¶¶ 2–75 and 109–132.

149.

The Cunninghams have incurred and will continue to incur attorney's fees and other expenses of litigation to prosecute the state-law claims asserted in this action.

150.

Each named defendant's actions have demonstrated bad faith, have no legal justification, and have caused the Cunninghams unnecessary delay and



-45-

expense.

### 151.

The Cunninghams are entitled to recover all costs of the prosecution of this

action, including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11.

### NOTICE OF LIS PENDENS

### 152.

The Cunninghams hereby notify all concerned that they are undertaking to

record a Notice of Lis Pendens regarding the Home in the Lis Pendens Docket

of the real estate records of the Clerk of Court of the Superior Court of

DeKalb County, Georgia.

### DEMAND FOR JURY TRIAL

### 153.

The Cunninghams hereby request a jury trial on all issues so triable.

### REQUEST FOR RELIEF

WHEREFORE, the Cunninghams respectfully request that this Court enter

judgment in their favor and against the defendants, and award the following

relief:

(a)   **On the first Count (RESPA Violation: Failure to Investigate or to**

**Respond to a Notice of Error)**: actual and compensatory damages as have been sustained in a sum to be determined at trial, damages for severe and demonstrable emotional distress and anxiety, compensation for reasonable attorney's fees and costs of litigation, and statutory damages not to exceed $2,000 for each proven RESPA violation;

(b) **On the Second Count (Breach of Contract)**: an order directing the suspension, cancellation, and/or rescission of any foreclosure sale, for damages proximately resulting from the defendants' breaches, and for equitable relief in the form of a formal accounting;

(c) **On the Third Count (Wrongful Foreclosure)**: a decree rescinding and setting aside any foreclosure sale, cancelling any Foreclosure Deed or Deed Under Power, and any subsequently recorded muniment of title, and for any allowable damages;

(d) **On the Fourth Count (Wrongful Attempted Foreclosure)**: an award of damages according to proof;

(e) **On the Fifth Count (Injunctive Relief)**: a temporary restraining order and an interlocutory injunction granting the Cunninghams leave to pay funds into the registry, enjoins the advertising for sale, the sale,



transfer, or encumbrance of the Home, and that sets this matter down at the earliest possible date for hearing;

(f) **On the Sixth Count (Declaratory Relief)**: a declaration determining, adjudging, decreeing and declaring that the Cunninghams' accounting for the Subject Loan is proper, correct, and in conformity with the terms of the Subject Loan and applicable law, and that the Cunninghams are not in default;

(g) **On the Seventh Count (O.C.G.A. § 13-6-11)**: an award of attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 regarding all state-law claims;

(h) For all other relief to which the Cunninghams may show themselves to be entitled;

(i) That recovery be joint and several as against each defendant; and,

(j) For such other and further relief as the Court may deem equitable and just in the premises.

**<<<This space left intentionally blank.>>>**



-48-

Respectfully submitted this 21st day of May, 2019.

315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
(404) 373-0205
(404)795-8999 FAX
general_mailbox@alembik.com

RICHARD S. ALEMBIK, PC

By:/s/ Richard S. Alembik
Richard S. Alembik
Georgia State Bar No. 008770
Attorney for Plaintiffs
Vernessa S. Cunningham and
Herman Cunningham

STATE OF <u>Georgia</u>          COUNTY OF _____ <u>DeKalb</u>

## VERIFICATION UNDER PENALTY OF PERJURY

We, the undersigned, are the plaintiffs identified in the foregoing complaint

that is captioned *Verified Complaint and Jury Demand* (the "Complaint"). We are

over the age of 18, *sui juris*, and otherwise competent to testify in court. Unless

the context suggests otherwise, we have personal knowledge of the facts set forth

in the Complaint, and believe them to be true and accurate. If a stated fact is

qualified (expressly or impliedly) as being "on information and belief," the fact or

opinion is true to the best of our knowledge, information, and belief formed after

reasonable inquiry.

*We each declare under penalty of perjury that the foregoing is true and correct .*

VERNESSA S. CUNNINGHAM          HERMAN CUNNINGHAM

Executed on the _21st_, day of          Executed on the _21st_, day of

_MAY_____2019          _MAY_____2019